# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RAIZEL ARMANDO CALVETTE CHIRINOS,**
         **Petitioner,**

         **v.**                                                        **Case No. 26-cv-369**

**MARKWAYNE MULLIN[1], et al.,**
         **Respondents.**

_____

## DECISION AND ORDER

Raizel Armando Calvette Chirinos filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement ("ICE"). On March 9, 2026, the United States was ordered to respond and show cause why the petition should not be granted. ECF No. 2. For the reasons that follow, the petition is granted.

## I. BACKGROUND

Petitioner is a Venezuelan national who arrived at the Nogales, Arizona Port of Entry on February 26, 2023. Petitioner was deemed inadmissible at the border. (Pet. ¶ 18.); 8 U.S.C. 1182(a)(7)(A)(i)(I) (lacking a valid unexpired visa or other valid entry document). However, he was paroled into the United States through the CBP One app program to pursue an asylum claim. (*Id.*) Petitioner began living in Waukesha, Wisconsin, and started a business with his partner Iris Vivas Laines. (*Id.*, ¶ 19.) His one-year parole period has since expired, but his asylum claim remains pending. (*Id.*, ¶ 20.)

---

[1] Secretary Mullin is substituted for Kristi Noem by operation of Federal Rule of Civil Procedure 25(d).

On September 11, 2025, petitioner began serving a 15-day jail sentence in Wisconsin for first offense OWI. (*Id.*, ¶ 21.) While in jail, ICE issued a detainer and arrest warrant. (*Id.*, ¶ 22.) On September 23, 2025, petitioner was transferred to the Dodge Detention Center and held in ICE custody. (*Id.*) Petitioner requested a bond hearing, but the immigration judge denied his request for lack of jurisdiction pursuant to 8 C.F.R. § 1003.19(h)(2). (*Id.*, ¶ 23.); *see Matter of Yajure Hurtado*, 29 I&N Dec. 216, 2025 WL 2674169, **2, n.3 (BIA Sept. 5, 2025).

Petitioner married Ms. Vivas Laines, a U.S. citizen, on January 6, 2026, and applied for adjustment to permanent resident status with U.S. Citizenship and Immigration Services ("USCIS") on March 3, 2026. Petitioner has been in ICE custody for approximately six months. (*Id.,* ¶ 48.) Other than his conviction for first-time OWI, petitioner has no other criminal history or notable interactions with law enforcement beyond traffic violations. (*Id.*, ¶ 24.)

In a related matter, petitioner and Ms. Vivas Laines commenced a federal action for mandamus relief on November 24, 2025. *See Calvette Chirinos, et al. v. Noem, et al.*, No. 25-cv-1863-NJ (E.D. Wis.). They alleged that ICE failed to timely respond to their request to allow them to get married while petitioner remains in custody, as well as failed to produce certain records under FOIA that petitioner believes are needed to prosecute his asylum claim. The petition alleged that an unwarranted delay in their marriage might result in Calvette Chirinos being removed from the country before he could apply for adjustment of status as the spouse of a U.S. citizen, forcing him to navigate a much slower consular route to legal status.

On February 20, 2026, Judge Joseph entered a temporary restraining order pausing the adjudication of petitioner's removal proceeding while his FOIA claim is litigated in the District Court. *Calvette Chirinos*, No. 25-cv-1863-NJ, ECF No. 22 (E.D. Wis. Feb. 20, 2026). On March 4, 2026, Judge Joseph noted that the marriage claims were mooted by the parties' January 6 marriage and therefore dismissed them. On March 6, 2026, petitioner and the ICE respondents stipulated that the TRO be extended to April 10, 2026. That case remains pending.

## II. DISCUSSION

Petitioner argues that the Immigration Judge's decision to deny him a bond hearing, and his subsequent detention for six months, violate the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause. He argues that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because he is not an "applicant for admission" who is "seeking admission." *See* § 1225(b)(2)(A) (stating that any noncitizen "applicant for admission" who is "seeking admission" but is deemed inadmissible "shall be detained" for removal proceedings). To the contrary, he contends that his detention must be pursuant to 8 U.S.C. § 1226(a), which allows for release on bond, because he was arrested far away from the border and many years after his entry into the country. And even if § 1225(b)(2) applied, petitioner argues that his prolonged detention without a fair opportunity to seek release on bond violates the Fifth Amendment's Due Process Clause.

Respondent argues that petitioner is correctly classified as an "applicant for admission" under 8 U.S.C. § 1225(b)(2) because he is a noncitizen "present in the United States who has not been admitted," § 1225(a)(1), while treatment under § 1226(a) is

3

reserved for noncitizens who were previously admitted into the country. Respondent argues that petitioner was never admitted, and more significantly, was paroled into the country at the Nogales, Arizona, port of entry. Therefore, § 1182(d)(5)(A) required that petitioner "return or be returned to the custody from which he was paroled and thereafter his case shall be dealt with as that of any other applicant for admission to the United States" after his one-year parole status expired, which it has. *See also* § 1182(d)(5)(A) (humanitarian parole of a noncitizen "shall not be regarded as an admission"); 8 C.F.R. § 212.5(e)(2)(i) (upon termination of parole by written notice, the noncitizen "shall be restored to the status that he or she had at the time of parole."). And because petitioner was originally an "arriving alien," essentially equivalent to an "alien seeking admission," petitioner must be subject to mandatory detention under § 1225(b).

I have previously held that mandatory detention under § 1225(b)(2)(A) applies only to noncitizens who are both "applicants for admission" and are apprehended while actively "seeking admission"—proximate in time and place to their most recent entry or attempted entry. *See López de la Cruz*, No. 25-CV-1562-LA (E.D. Wis. Nov. 19, 2025). This interpretation accords with the Seventh Circuit's decision in *Castañon-Nava v. U.S. Dep't of Homeland Sec.* which found that noncitizens detained far from the border are not subject to mandatory detention under § 1225(b)(2). 161 F.4th 1048, 1061–62 (7th Cir. 2025). Two other circuit courts of appeals have reached the opposite conclusion: *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Herrera Avila v. Bondi*, No. 25-3248 (8th Cir. Mar. 25, 2026) (slip op.). Notably, the Seventh Circuit's case was decided on a preliminary posture, and all three cases were decided by 2-1 divided panels.

While the law in this area is decidedly unsettled, I have no reason today to reconsider my past reasoning.

However, this case differs from *López de la Cruz*, where that petitioner simply entered without inspection, because Calvette Chirinos surrendered to border authorities in Nogales, Arizona, and was found inadmissible but released into the United States under humanitarian parole. *See* 8 U.S.C. § 1182(d)(5). Petitioner raises several arguments in response: (1) the long-understood meaning of "seeking admission" under § 1225(b)(2) excludes petitioner, even if he is to be treated as an "applicant for admission" under § 1182(d)(5)(A), (2) petitioner's classification as an "arriving alien" when he was originally inspected by border agents is currently irrelevant because his September 23, 2025, arrest warrant was issued pursuant to § 1226(a) and he was arrested far away from the border, and (3) petitioner was neither given notice that his parole was being affirmatively terminated, nor promptly detained after his parole automatically terminated, so his arrest violates due process. In considering the arguments from both sides, I find that petitioner is not "seeking admission" as that term is used in § 1225(b)(2), notwithstanding his entry under humanitarian parole. Therefore, he is entitled to release or a prompt bond hearing, and I decline to reach petitioner's other statutory and Due Process arguments.

To reach this conclusion, I follow (without fully restating) the reasoning discussed in *Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025), and adopted by several district courts nationwide. *See, e.g., Forys v. Raycraft*, 26-cv-149, 2026 WL 516951, *3 (W.D. Mich. Feb. 25, 2026); *Hernan Jose M. M. v. Easterwood*, No. 26-cv-481, 2026 WL 559746, **7–8 (D. Minn. Feb. 27, 2026); *Rafibaev v. Noem*, No. 26-

cv-461, 2026 WL 607559 (D. Colo. Mar. 4, 2026). Respondent's theory reads the "returned to the custody from which he was paroled" language in § 1182(d)(5)(A) to mean that petitioner was automatically returned to the status of an "arriving alien" when his parole expired. It is not obvious from the statutory text how the first proposition compels the second, so respondent fills the gap by referencing 8 C.F.R. § 1001.1(q): "An arriving alien remains an arriving alien even if paroled pursuant to [§ 1182(d)(5)], and even after any such parole is terminated or revoked." And, so the argument goes, the phrase "arriving alien" plainly suggests someone who is near in time and place to their entering the country—or "seeking admission."

As I stated in *López de la Cruz*, I must now consider agency regulations for their persuasive value alone. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Longstanding agency interpretations may be entitled to some weight, but they are not to be given strong deference. *Id.* at 402. And as the court in *Qasemi* held, § 1182(d)(5)(A) "does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi*, 2025 WL at *10. Instead, it states that the noncitizen "be returned to the custody from which he was paroled" and "be dealt with in the same manner as that of any other applicant for admission." § 1182(d)(5)(A). The word "custody" should not be read to mean "detention" when Congress could have chosen to say "detention" but did not. Rather, "custody" is more naturally interpreted to describe the general lack of liberties a noncitizen possesses before being granted parole: e.g., working, applying for public benefits, and living in the community. *Qasemi*, 2025 WL at *11. Read this way, "[t]he statute does not require the Court to pretend that [petitioner] was never paroled and permitted to live freely

6

in this country. A noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly." *Id.*

There are several reasons to suggest that this is the best reading of § 1182(d)(5)(A). First, § 1225(b)(1) describes a specific category of "arriving" noncitizens who are subject to mandatory detention *and* expedited removal: those deemed inadmissible "due to fraud, misrepresentation, or lack of valid documentation" . . . or "certain other aliens designated by the Attorney General." *Jennings*, 583 U.S. at 837. However, § 1225(b)(1)(A)(iii)(II) specifically *excludes* from this category certain noncitizens who were previously admitted or paroled into the United States and had been physically present in the United States continuously for two years. So, to read § 1182(d)(5)(A) as nevertheless requiring mandatory detention of noncitizens with previous parole status would turn this exception in § 1225(b)(1) into surplusage, which courts are reluctant to do. *Qasemi*, 2025 WL at *11 (citing *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011)).

Second, the language in § 1182(d)(5)(A) requiring treatment "in the same manner as that of any other applicant for admission" implies that a noncitizen with expired parole arrested far away from the border should be given the default treatment for noncitizens detained inside the country—§ 1226(a). *See Jennings*, 583 U.S. at 288. Third, it would be "potentially absurd" to treat noncitizens who surrender for inspection at a port of entry and demonstrate "urgent humanitarian reasons or significant public benefit" less favorably than noncitizens who simply enter without inspection. *Qasemi*, 2025 WL at *12; § 1182(d)(5)(A); *Jefferson v. United States*, 546 F.3d 477, 483 (7th Cir. 2008) (Courts must

7

"give words their plain meaning unless doing so would frustrate the overall purpose of statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent."). The rule against absurd results is not a license for courts to rewrite absurd legislation, but a guide to identifying the most correct meaning of a statute.

A similar sentiment was discussed by the Fifth Circuit panel in *Buenrostro-Mendez*, where the panel held that it might be contrary to Congress's intent, or perhaps unwise policy more generally, to privilege noncitizens caught in the country's interior over those caught near the border. 116 F.4th at 508. But there are plausible reasons for treating noncitizens who are well-settled in communities, perhaps working jobs and supporting families, differently from new arrivals. As a noncitizen spends years in the country, it is expected that he or she will develop connections to the United States and its citizens that may help establish a defense to removal or a path to permanent legal status. There are far fewer conceivable reasons to justify treating a parolee worse than someone who simply enters without inspection and avoids detection but is otherwise equally situated. The lack of any reasonable basis for what appears to be paradoxical treatment at least suggests that another reading of the INA might be more correct.

For these reasons taken together, I cannot conclude that petitioner's parole status permanently renders him an "arriving alien," and by extension, an "alien seeking admission." And without that statutory linkage, respondent cannot show that petitioner is seeking admission years after his physical entry while living in Wisconsin. Petitioner is thus similarly situated to the petitioner in *López de la Cruz*—he has lived in this country for several years and must therefore be detained under 8 U.S.C. § 1226(a) rather than § 1225(b)(2). In fact, it appears that petitioner *was* detained pursuant to § 1226(a), and

respondent's current position is a legal theory created *ex post* to justify mandatory detention. *See* ECF No. 10-2 (warrant authorizing petitioner's arrest pursuant to INA 236). In sum, petitioner's status under § 1226(a) entitles him to a fair bond hearing before an Immigration Judge.

### III. CONCLUSION

In conclusion, petitioner's detention is "in violation of the Constitution or laws or treaties of the United States," specifically the Immigration and Nationality Act, because he is detained pursuant to 8 U.S.C. § 1226(a) under which he is entitled to a fair opportunity to seek release on bond. 28 U.S.C. § 2241(c)(3). Therefore, **IT IS ORDERED** that the petition for a writ of habeas corpus is **GRANTED**. Petitioner must be afforded a bond hearing pursuant to 8 U.S.C. § 1226(a) within 10 days of this order. The Clerk will enter final judgment.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

9