# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**RAIZEL ARMANDO CALVETTE CHIRINOS,**
      **Petitioner,**

    **v.**                              **Case No. 26-cv-369**

**SAM OLSON, et al.,**
        **Respondents.**

_____

## DECISION AND ORDER

Petitioner commenced this § 2241 habeas action challenging his detention by U.S. Immigration and Customs Enforcement ("ICE"). He is currently detained at the Dodge County Detention Facility in Juneau, Wisconsin. I found that petitioner's mandatory detention under 8 U.S.C. § 1225 was unlawful and ordered that he be afforded a bond hearing pursuant to § 1226(a). *Chirinos v. Mullin*, No. 26-cv-369, 2026 WL 905416 (E.D. Wis. Mar. 30, 2026).

Petitioner attended a bond hearing on April 9, 2026, in Chicago before Immigration Judge Akash Vyas ("IJ"). The IJ held petitioner to the burden of proof and denied his request for bond. ECF No. 17-1 at 4. He found that petitioner failed to show he was not a danger to the community and not a flight risk. *Id.*

Petitioner seeks a new bond hearing, arguing that the bond hearing he received was constitutionally defective because it assigned the burden of proof to the detainee. Respondents oppose the motion on a variety of grounds. For the reasons that follow, I grant petitioner's request.

## I. BACKGROUND

Petitioner is a Venezuelan national who arrived at the Nogales, Arizona, Port of Entry on February 26, 2023. He was deemed inadmissible at the border, *see* 8 U.S.C. § 1182(a)(7)(i)(I), but was paroled into the United States under the Customs and Border

Protection ("CBP") One app program to pursue an asylum claim. Since his entry, petitioner has resided in Waukesha, Wisconsin with his now-wife Iris Vivas Laines. Petitioner's one-year period of parole has expired, but his asylum claim remains pending.

On September 11, 2025, petitioner began serving a 15-day jail sentence in Wisconsin for first offense OWI. While he was in jail, ICE issued a detainer and arrest warrant. On September 23, 2025, petitioner was transferred to the Dodge County Detention Facility and held in ICE custody.

At his March 30, 2026, bond hearing, petitioner argued that he was not a flight risk and not a danger to the community. ECF No. 17-1. He offered mitigating context for a 2023 traffic violation which involved an open alcohol container. He also noted that he has remained sober since the OWI conviction, has significant ties to the community, and has a path to legal status through his U.S. citizen wife.

The government argued that he was both a danger to the community and a flight risk. *Id.* It noted that the OWI conviction was aggravated by a child being present in the car. As for flight risk, it argued that petitioner had been living in this country for only a few years and that his path to legal status is unclear.

The IJ then delivered an oral ruling:

Okay very well. Thank you very much. Thank you to both parties for the presentation and arguments. The Court is prepared to rule. The [petitioner], through Counsel, makes strong arguments concerning the [petitioner]'s ties to the United States, specifically that the [petitioner] is married to a United States citizen and has a pending adjustment of status. He also has, pursuant to Counsel's argument, a pending asylum application and that the [petitioner] has been here for 3 years. The government makes an argument as to both the flight risk analysis, as well as the danger analysis.

The government argues that this recent 2025 DUI conviction is serious in nature since it involved not only driving while under the influence, but also driving while under the influence and having a passenger, a minor passenger, in the vehicle. The DHS also points out that there have been arrests for open alcohol in the past. The DHS also makes an argument concerning flight risks and indicates that and argues that the respondent is a recent entry and it is

2

unclear whether the [petitioner] has family members. But the Court would note that there is evidence that the [petitioner] is married to a United States citizen.

Based upon the totality of the circumstances, the Court notes that the burden of proof in this case is on the [petitioner] to show that he is not a danger and that he is not a flight risk. The Court finds that all DUIs are serious. Having said that, there is a spectrum of severity within DUIs. There are cases where there is no injury, there are no minors that are involved, and a DUI can range all the way to the most serious involving death or great bodily harm. In this particular case, there is evidence that the [petitioner] was convicted of a DUI last year and a minor passenger was in the vehicle. That alone, the Court would find, makes the [petitioner] a danger to the community. The Court is not accorded with an opportunity to review a neutral police report or to ascertain the specific facts of this case other than he was convicted and a minor was involved in the arrest. More so, the Court would point to the open alcohol arrest, while not resulting in necessarily a conviction, does indicate that there is potentially an alcohol use issue.

The Court would also note that the [petitioner] is a recent entry and within these relatively short period of time has been arrested multiple times for traffic violations and of course, this DUI, which the Court considers serious. Based upon the totality of the circumstances. The Court finds that the [petitioner] has not met his burden of proof to establish that he is not a danger and that he is not a flight risk. Accordingly, the Court will deny bond.

ECF No. 17-1 at 4.

## II. DISCUSSION

As a threshold matter, respondents argue that this court lacks jurisdiction to entertain petitioner's motion. Alternatively, respondents ask that I deny the motion on exhaustion grounds. I disagree with both assertions.

### A. Jurisdiction

A district court retains jurisdiction to determine compliance with a conditional habeas writ. *Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019). Therefore, I may consider whether petitioner was afforded "a fair opportunity to seek release on bond . . . pursuant to 8 U.S.C. § 1226(a)." ECF No. 12 (order); *Aguilar Gonzalez v. Maples*, No. 4:26-cv-22, 2026 WL 1073846, *1 (S.D. Ind. Apr. 20, 2026).

3

Respondents argue that the IJ's bond decision was a "discretionary judgment" or "decision" that is immune from judicial review. 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). A separate section, § 1252(a)(2)(B)(ii), bars judicial review of any "decision or action" committed by law to the "discretion of the Attorney General or the Secretary of Homeland Security." To the extent petitioner asks me to review the IJ's factual findings and ultimate determination, respondents are correct that I may not.

However, neither § 1226(e) nor § 1252(a)(2)(B)(ii) bar habeas review of the "statutory framework" itself. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *López de la Cruz v. Schmidt*, No. 25-cv-1562-la, 3–5 (E.D. Wis. Nov. 19, 2025). I may not review how the IJ weighed the evidence at petitioner's hearing, but the law he applied and the process itself are fair game. *Aguilar Gonzalez*, 2026 WL at **1–2.

Respondents cite to an order from the Western District of Tennessee denying a motion for relief where the habeas petitioner—like Calvette Chirinos—received a bond hearing but was dissatisfied with the IJ's ruling. *See Urrutia-Diaz v. Ladwig*, 2:25-cv-3098, ECF No. 16 (W.D. Tenn. Feb. 18, 2026). The court reasoned that § 1226 and due process guaranteed a bond hearing but not any particular outcome. *Id.* ("That Petitioner disagrees with the hearing's result does not mean his continued detention violates due process."). That much is true, but a hearing that is structurally unfair *would* violate due process. Habeas jurisdiction extends to such claims, so I have jurisdiction to proceed on that limited question. *Demore*, 538 U.S. at 517.

## B. Exhaustion

Respondents argue that I should require petitioner to exhaust his administrative remedies by appealing the burden of proof issue up to the Board of Immigration Appeals.

4

District courts must exercise "sound judicial discretion" to decide whether a petitioner must exhaust his claim in an administrative tribunal before filing a habeas petition. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).

The Seventh Circuit has said that exhaustion should be excused when (1) requiring administrative exhaustion causes prejudice due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) substantial constitutional questions are raised. *Id.* (citing *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)).

Respondents cite decisions from this circuit where the district court required an immigrant to exhaust his remedies in the immigration courts before filing a habeas petition. *See Aguilar Gonzalez*, 2026 WL 1073846 (S.D. Ind. Apr. 20, 2026); *Vargas Sanchez v. Olson*, No. 4:26-cv-53, 2026 WL 801515 (S.D. Ind. Mar. 23, 2026). The court in *Aguilar Gonzalez* addressed the four grounds to excuse exhaustion listed in *Gonzalez*.[1] It considered various factors, but notably found that IJs and the BIA have "greater expertise than this Court on the questions of how immigration judges should or should not weigh evidence in administrative bond hearings." *Aguilar Gonzalez*, 2026 WL, at \*3. It also recognized that a constitutional question would "weigh" against requiring exhaustion, *Id.*, at \*5, but elsewhere noted that the doctrine of constitutional avoidance might instead weigh *for* requiring exhaustion. *Id.*, at \*3.

---

[1] The *Aguilar Gonzalez* and *Vargas Sanchez* decisions—drafted by the same judge—oddly treat the four grounds in *Gonzalez* as factors to balance rather than four independent grounds. It found that the timeline prejudice factor "would have weighed against requiring exhaustion" had the petitioner filed a timely appeal to the BIA. *Aguilar Gonzalez*, 2026 WL, at \*3. It found that agency competency and the presence of a constitutional question "weigh[ed] in favor of requiring exhaustion, while futility/bias was "a neutral factor." *Id.*, at \*5. On balance, these "factors" weighed for enforcing an exhaustion requirement. *Id.*, at \*6.

5

*Vargas Sanchez* was drafted by the same judge and relied on substantially similar reasoning. It notes that "who should bear the burden of proof in the bond determination" is an open question in the Seventh Circuit. *Vargas Sanchez*, 2026 WL, at *4. The court avoided this "thorny constitutional question" by abstaining in favor of exhaustion. *Id.*

I read *Gonzalez* to provide four independent grounds, where any one ground being met would dispense with the typical expectation that a petitioner exhaust administratively. Therefore, the presence of a substantial constitutional question is *per se* reason enough to retain jurisdiction.

But separately, I depart from *Aguilar Gonzalez* and question whether immigration judges are competent to resolve constitutional questions. As I understand, immigration judges and the BIA lack jurisdiction to hear constitutional challenges against their agency's own statutes and regulations. *See Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992);[2] *Bagues-Valles v. I.N.S.*, 779 F.2d 483, 484 (9th Cir. 1985) ("The BIA, however, has no jurisdiction to adjudicate constitutional issues."). The Seventh Circuit has said that "due process claims are generally exempt from the exhaustion requirement because the [BIA] does not have authority to adjudicate constitutional issues." *Castaneda-Suarez v. I.N.S.*, 993 F.2d 142, 144 (7th Cir. 1993). If 8 C.F.R. § 236.1(c)(8) and § 1236.1(c)(8) indeed violate due process by putting the burden of persuasion on detainees, an immigration court can offer no relief.

Therefore, I will not require that petitioner exhaust his due process claim administratively and will proceed to the merits.

## C. Due Process

ICE detention is governed mainly by four provisions of the INA:

---

[2] *See also Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 n.2 (BIA 2020) ("The respondent also argues that placing the burden of proof on the alien to establish that he merits release on bond is constitutionally deficient. However, we do not have the authority to entertain constitutional challenges to the statutes and regulations we administer.").

- **Section 236(a), 8 U.S.C. § 1226(a)** – Discretionary detention for noncitizens pending their removal proceeding. Detainees may be released on bond if they are not a flight risk or danger to the community.

- **Section 236(c), 8 U.S.C. § 1226(c)** – Mandatory detention for noncitizens who have been arrested for, or convicted of, certain crimes, or suspected of terrorist activity.

- **Section 235(b), 8 U.S.C. § 1225(b)** – Mandatory detention for "applicants for admission" who are "seeking admission."[3]

- **Section 241(a), 8 U.S.C. § 1231(a)** – Mandatory detention for 90 days following a final order of removal, and discretionary detention after 90 days.

Smith, Hillel R., *Immigration Detention: A Legal Overview*, Congressional Research Service (Sept. 16, 2019). In implementing § 1226(a), Department of Justice regulations place the burden of showing entitlement to bond on the detainee. 8 C.F.R. §§ 236.1(c)(8) & 1236.1(c)(8) ("[T]he alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); *In re Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999) (extending 8 C.F.R. § 236.1(c)(8) to immigration judges). Petitioner argues that the government must bear the burden of proof in § 1226(a) bond hearings to satisfy the Fifth Amendment's Due Process Clause.

Neither the Supreme Court nor the Seventh Circuit have considered whether the Due Process Clause requires that the government bear the burden of proof, and if so, whether it should be a heightened standard of proof. The Supreme Court came close in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), but left the question unanswered. In the case below, the Ninth Circuit held as a matter of statutory interpretation that § 1226(a) implicitly required "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Jennings*, 583 U.S. at 306; *Rodriguez v. Robbins*, 804 F.3d 1060, 1085 (9th Cir. 2015) (rev'd). The Supreme

---

[3] See *Morales Mejia v. Mullin*, No. 26-cv-515, 2026 WL 973041 (E.D. Wis. Apr. 10, 2026), for a broader discussion.

7

Court found "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." *Jennings*, 583 U.S. at 306. The question of whether constitutional due process requires more than the text of § 1226(a) was left unanswered.

In this vacuum, a circuit split emerged. The First Circuit applied the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and held that the government holds the burden of proof at § 1226(a) bond hearings. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021). Furthermore, the government must show danger to the community by clear and convincing evidence, but show flight risk only by a preponderance of the evidence. *Id.* at 40. The *Hernandez-Lara* court found dangerousness more analogous to proceedings involving pre-trial criminal bond, mental health civil commitment, and parental-child rights, where the government traditionally held a higher burden of proof. *Id.* Conversely, the detainee has better access to evidence of flight risk than the government, and flight risk hews closer to the government's strong interest in promptly resolving removal cases.[4] *Id.* Either intentionally or by accident, this mirrors the burden of proof required for federal criminal pre-trial detention. Under 18 U.S.C. § 3142(f), the government must show that no condition or combination of conditions will reasonably assure the defendant's appearance by a preponderance of the evidence, or the safety of the community by clear and convincing evidence, respectively. *United States v. Portes*, 786 F.2d 758, 764–65 (7th Cir. 1985).

The Second Circuit reached a similar conclusion. It held in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) that due process required the government to prove either flight risk or community danger, both by clear and convincing evidence, when an individual's detention becomes "prolonged." *Velasco Lopez*, 978 F.3d at 854, 856–57 (deeming "fifteen

---

[4] As petitioner notes, another judge in this district adopted *Hernandez-Lara*'s reasoning in a previous case. *See Hulke v. Schmidt*, 572 F.Supp.2d 593 (E.D. Wis. 2021) (Stadtmueller, J.). Judge Stadtmueller joined the "growing chorus of district courts" putting the burden on the government. *Id.* at 602. Since then, the chorus has turned into a circuit split.

months without an end in sight" prolonged).[5] As that court reasoned, the government has no legitimate interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Id.* at 854. Rather, there is a strong government interest in minimizing incarceration "in cases where it serves no purpose." *Id.* "Thus, the longer detention continues, the greater the need for the Government to justify its continuation." *Id.* at 855. "While the Government's interest may have initially outweighed short-term deprivation of Velasco Lopez's liberty interests, that balance shifted once his imprisonment became unduly prolonged." *Id.*

Several circuits disagree. The Fourth Circuit found that due process under *Mathews v. Eldridge* does not compel the government to bear the burden of proof at § 1226(a) bond hearings. *Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022). Departing from *Hernandez-Lara*, it emphasized the petitioner's many administrative opportunities to request bond, appeal a denial, and request again if circumstances change. *Id.* at 362. It also noted that noncitizens are simply owed fewer due process rights than citizens and the government's "sovereign prerogative" in immigration matters. *Id.* at 360, 366.

The Ninth Circuit concurs. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022). The Eighth seems to join them. *Ali v. Brott*, 770 F.App'x 298 (8th Cir. 2019) (unpublished, finding no constitutional issue with the bond hearing regulations). The Third as well, at least in part. *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018). "These all-over-the-map holdings present more than the usual circuit split. Put

---

[5] District courts in the Second Circuit seem to find periods of detention "prolonged" around the one-year mark. *See, e.g., Huanga v. Decker*, 599 F.Supp.3d 131, 141 (S.D.N.Y. 2022) (collecting cases) ("In contrast, Huanga was first detained on September 30, 2021, and therefore when he filed his petition, he had been detained for five-and-a-half months. Even now he has been detained for under eight months. While Huanga's interest in his liberty is compelling and weighs in his favor, we conclude that it must be regarded as somewhat less weighty than the lengthier detentions in the decisions reviewed above.")

together, they're a circuit splat." *Black v. Almodovar*, 156 F.4th 171, 174 (2d Cir. 2025) (Nardini, J., dissenting from denial of en banc).

***

Like the cases above, I start with the *Mathews v. Eldridge* factors: "first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Simpson v. Brown*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Due process sets a constitutional floor on procedure that the government must offer before depriving a person of life, liberty, or property. The government may always offer more process, but cannot offer less than is due under the constitution.

The first factor to consider is petitioner's private liberty interest. This factor weighs heavily for petitioner because he has spent nearly nine months locked in ICE detention, presumably in conditions "indistinguishable from those imposed on criminal defendants" because the Dodge County Detention Facility is a county jail. *Velasco Lopez*, 978 F.3d at 850. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

To be sure, as the government notes, noncitizens in removal proceedings have no freestanding due process right to be free during those proceedings. ECF No. 19 at 15. "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976). And notwithstanding a sincerely-held fear of persecution or torture and long-term separation from family, noncitizens may accede to removal and be thus freed from detention. But a noncitizen's "constitutionally protected liberty interest in avoiding physical confinement" is not "conceptually different" from the liberty interest of full citizens. *Velasco Lopez*, 978 F.3d at 856 (citing *Demore*, 538 U.S. at 553 (Souter, J., concurring in

10

part and dissenting in part)). The Fifth Amendment plainly applies to "any person," and all people have an equal interest their own liberty. U.S. Const. amend. V; *Reno v. Flores*, 507 U.S. 292, 306 (1993). Therefore, this factor weighs heavily for petitioner.

Second, I consider the risk of erroneous deprivation and the value, if any, of additional procedural safeguards. The burden of proof is a tool to allocate the risk of error between the parties. *Matter of Palmisano*, 70 F.3d 483, 486 (7th Cir. 1995). "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington v. Texas*, 441 U.S. 418, 427 (1979).

Shifting the burden onto the government would lessen the risk that a noncitizen remains detained despite being neither a flight risk nor a danger to the community. Conversely, it might marginally increase the risk that a freed individual will abscond or engage in criminal behavior. The government also argues that some evidence bearing on dangerousness and flight risk—ties to the United States, employment history, and established residency—might be more accessible to the noncitizen than the government. ECF No. 19 at 17. It might then make sense to assign that party the burden of proof.

I also recognize that detainees enjoy a substantial *quantity* of process even if it lacks *quality*. Each receives a prompt initial custody determination by an immigration officer. 8 C.F.R. § 236.1(c)(8). Decisions denying bond may be appealed to an immigration judge for *de novo* review. *Id.*, at § 236.1(d). Denial again may be appealed to the Board of Immigration Appeals. *Id.* Redetermination may be requested at any time if an individual's circumstances have materially changed. 8 C.F.R. § 1003.19(e). They may bring a lawyer if they can afford one—but have no right to one if they cannot. They receive notice, may present evidence, and receive a decision from an ostensibly-neutral arbiter. In short, they have "the opportunity to

be heard" at "a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).

But on balance, other reasons tilt this factor toward the petitioner. Few detainees—by one count, only 14%—are fortunate enough to be represented by counsel.[6] Gathering evidence and building a case may be difficult or impossible while detained without outside support or English language proficiency. The government, on the other hand, has an army of lawyers, access to the vast resources of the DOJ, DHS, and FBI, the records belonging to state and local authorities, and regulatory authority to obtain any other necessary material. *Velasco Lopez*, 978 F.3d at 853. With the burden of proof, noncitizens are essentially forced to prove a negative, albeit only by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 31. Moreover, a noncitizen may not always sit silent and put the government to its burden like a defendant in criminal court. In civil immigration proceedings, the IJ may draw adverse inferences from a detainee's silence. *Barradas v. Holder*, 582 F.3d 754, 766 (7th Cir. 2009). Given the government's practical and structural advantages, it almost seems gratuitous to relieve it of the burden of proof as well. For these reasons, the second factor weighs for petitioner.

Third, I consider the government's interests. The government has a clear and compelling interest in enforcing immigration law. This interest is undermined if a substantial number of noncitizens abscond or endanger the public before removal. And respondent notes that "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).

---

[6] Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. Pa. L. Rev. 1, 32 (2015).

However, the prerogatives of the legislative and executive branches are not equal. The constitution vests the power to establish a "uniform Rule of Naturalization" with Congress. U.S. Const. Art. I., § 8, cl. 4. And Congress's rule says nothing of the burden of proof in bond proceedings. *See* 8 U.S.C. § 1226(a). The executive's gloss adds that detail, 8 C.F.R. § 1236.1(c)(8), but its interpretation does not receive strong deference just because § 1226(a) is ambiguous. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 413 (2024). Rather, ambiguity might instead be construed against the government under the rule of lenity. *Id.* at 434 ("That principle upholds due process by safeguarding individual liberty in the face of ambiguous laws.") (Gorsuch, J., concurring).

The government has an interest in detaining dangerous or flight-prone people, but also has an interest in *not* detaining people who are neither. *Velasco Lopez*, 978 F.3d at 857 ("The Government has prevailed because it has no interest in the continued incarceration of an individual who it cannot show to be either a flight risk or a danger to his community."). The errors of needless detention harm the detainee, the taxpayer, and the public at large. And the government's interest in detaining people who are dangerous or a flight risk is not particularly undermined by the "burden" of having to do some work and put a case together. *Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024) ("Certainly, having to do something instead of nothing imposes an administrative and fiscal burden of some kind. But the Department of Justice reported an average cost of detaining noncitizens, in 2019, of $88.19 per prisoner per day."). Therefore, the government's interest in avoiding the burden of proof is not particularly strong.

In sum, all three factors weigh for petitioner. The resources of each side in an immigration bond hearing are so fundamentally unbalanced, even for this lucky petitioner who was represented by counsel, that the government must shoulder a greater share of the risk of error. I join *Hulke v. Schmidt*, 572 F.Supp.3d 593 (E.D. Wis. 2021), and *Hernandez-Lara*

13

*v. Lyons*, 10 F.4th 19 (1st Cir. 2021), and find that the government must bear the burden of proof in § 1226(a) bond hearings. The government must show dangerousness by clear and convincing evidence and a risk of flight by a preponderance of the evidence. These different burdens reflect the relative access to evidence between the government and noncitizen. They also mirror the Bail Reform Act of 1984 (codified at 18 U.S.C. § 3142), where Congress spoke on the rights of pre-trial criminal defendants with similar interests at play.

Procedural due process guarantees a fair process, not a correct outcome. *Marozsan v. United States*, 90 F.3d 1284, 1289 (7th Cir. 1996). But regardless of the outcome, the process matters.

### III. CONCLUSION

For these reasons, **IT IS ORDERED** that petitioner's Motion to Enforce Order (ECF No. 14) is **GRANTED**. Respondent shall give petitioner a new bond hearing pursuant to 8 U.S.C. § 1226(a) within 10 days of this order. The government shall bear the burden of proof in showing danger to persons or property by clear and convincing evidence, and on likelihood to appear in future proceedings by a preponderance of the evidence.

**IT IS FURTHER ORDERED** that petitioner's motion for extension of time (ECF No. 20) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 12th day of June, 2026.


/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

14