**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**RAIZEL ARMANDO CALVETTE CHIRINOS,**

**Petitioner,**

**v.** **Case No. 26-cv-369**

**SAM OLSON, *et al.*,**

**Respondents.**

---

## DECISION AND ORDER

Petitioner commenced this § 2241 habeas action on March 6, 2026, challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") at Dodge County Detention Facility in Juneau, Wisconsin. On March 30, 2026, I granted the habeas petition, finding that petitioner's mandatory detention under 8 U.S.C. § 1225 was unlawful and that he should be afforded a bond hearing pursuant to § 1226(a). *Chirinos v. Mullin*, No. 26-cv-369, 2026 WL 905416 (E.D. Wis. Mar. 30, 2026); ECF No. 12. After that decision, the Seventh Circuit clarified that noncitizens like petitioner, who were present in the country and not "seeking admission," are detained under 8 U.S.C. § 1226 and are thus eligible for bond hearings. *Cirrus Rojas v. Olson*, 183 F.4th 909 (7th Cir. 2026).

A bond hearing took place on April 9, 2026, and petitioner was denied bond. Arguing that the hearing was constitutionally deficient because the Immigration Judge ("IJ") placed the burden of proof on petitioner to show that he was not a danger or a flight risk, petitioner filed a motion to enforce my order granting the habeas petition. I granted this first motion to enforce on June 12, 2026, concluding that the government must bear the burden of proof in a § 1226 bond hearing and ordering a new bond hearing for petitioner on that basis. *Calvette Chirinos v. Olson*, No. 26-cv-369, 2026 WL 1724667 (E.D. Wis. June 12, 2026); ECF No. 23.

In deciding *Cirrus Rojas* the following month, the Seventh Circuit appeared to accept that, contrary to my decision, the burden to prove that detention is unnecessary is on the noncitizen and "the government need not present any evidence justifying detention."[1] 183 F.4th at 917 (citing *In re Guerra*, 24 I.&N. Dec. 37 (B.I.A. 2006), without disapproval).

Pursuant to my order on the first motion to enforce, a second bond hearing took place on June 16, 2026. Again, petitioner was denied bond. A transcript of the hearing shows that the IJ understood his obligation to act consistently with my decision by placing the burden of proof on the government. Nevertheless, after considering all arguments presented by petitioner's immigration counsel—including the argument that he should conduct a forward-looking analysis taking into account rehabilitative evidence and the probability of future conduct —the IJ found that the government had sustained its burden of proof that petitioner was a danger to the community. In relevant part, the IJ stated:

> The court notes that family and community ties generally do not mitigate [a finding of dangerousness]. In this particular case, in the incident case, [petitioner] has been twice arrested and twice found guilty. In 2023, [petitioner] was found guilty of driving without a license and driving with an open intoxicant. The court notes that there are mitigating circumstances that were proffered concerning this violation, but the court nevertheless finds that both of these charges are serious offenses as reiterated by the Seventh Circuit. The court also notes that in 2025 [petitioner] was arrested and found guilty of OWI. The court again finds that this is a serious offense, and the court again looks at the Seventh Circuit and finds that this is a dangerous offense that puts individuals at risk both as passengers and other motorists on the road. The court notes that a minor passenger was present in the vehicle when [petitioner] was arrested for this offense. The court notes that both the 2023 incident and 2025 incident are both recent arrests and findings of guilty. The court does note that there are mitigating circumstances here for the 2025 arrest for OWI. [Petitioner] has successfully completed alcohol classes and [petitioner] has claimed that he has maintained sobriety. The court commends [petitioner] on those actions, but the court nevertheless finds that this offense is a serious one. … The court finds that this mitigation is not sufficient to successfully mitigate his danger. As

---

[1] Arguably the issue of burden of proof at § 1226 bond hearings and related due process considerations were not squarely presented and analyzed in *Cirrus Rojas*, so the Court's discussion of *Guerra* hearing standards may be considered dicta, but persuasive authority nonetheless.

> indicated by the Seventh Circuit, driving while intoxicated or driving without a license reflects both an indifference to the welfare of other drivers and pedestrians and the defiance of known legal obligations. … The
> court finds that the government has established their appropriate burden of proof.

ECF No. 29-2 at 7-8. Ultimately, based on a "totality of the circumstances," the IJ found that petitioner is an ongoing danger and denied him bond on that ground alone, without needing to consider flight risk. *Id.* at 8.

On July 9, 2026, prior to the Seventh Circuit's *Cirrus Rojas* decision, petitioner filed a second motion to enforce my granting of his habeas in this action. This time petitioner argues that the second bond hearing "did not conduct the individualized, forward-looking dangerousness assessment" required by due process and my earlier orders. ECF No. 31 at 1-2. As a remedy, petitioner seeks either immediate release or a third, compliant bond hearing. Respondents oppose the current motion on several grounds. For the reasons set forth below, I deny petitioner's second motion to enforce.

Petitioner has also filed a motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), because I granted his habeas petition, affording him the bond hearing he sought. This motion is granted but stayed in effect, as discussed below.

## I. SECOND MOTION TO ENFORCE

Respondents again raise threshold arguments that I lack jurisdiction to set aside the IJ's decision on bond, and that petitioner has not exhausted his administrative remedies before bringing this motion. I agree with respondents that I do not have jurisdiction to address the merits of petitioner's current arguments challenging the denial of bond in his case, and I deny the second motion to enforce on this ground.

Although federal district courts may ensure that immigration hearings comply with the basic requirements of due process, we do not have jurisdiction to review the discretionary bond determinations of immigration judges. *See* 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii);

*Demore v. Kim*, 538 U.S. 510, 517 (2003). Similarly, while I may retain jurisdiction to determine compliance with my own conditional habeas writ, *see Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019), that limited enforcement jurisdiction cannot override clear statutory limitations on the scope of a district court's authority to interfere with decisions committed to the discretion of immigration courts. My previous ruling on petitioner's first motion to enforce was directed at the structural fairness of the hearing itself and addressed a colorable due process claim. (Even that ruling on burden of proof appears to have been implicitly called into question by the Seventh Circuit in *Cirrus Rojas*.) Unlike the first motion, the second motion to enforce asks me to inquire deeply into and take issue with the rationale and decision-making of the IJ who denied bond. As I noted in my earlier order, "[t]o the extent petitioner asks me to review the IJ's factual findings and ultimate determination, respondents are correct that I may not." ECF No. 23 at 4.

To get past the clear jurisdictional bar, petitioner attempts to frame the current motion to enforce as a constitutional challenge, arguing that due process requires an individualized, forward-looking determination on bond. That may be true as a very general statement, but it cannot serve to justify a wholesale interrogation of what is ultimately a discretionary decision by the IJ. Additionally, after reviewing the transcript of the second bond hearing, excerpted above, I am not persuaded that the IJ failed to conduct an individualized, forward-looking determination. The IJ weighed heavily petitioner's previous arrests involving intoxicants and motor vehicle operation and found that evidence of petitioner's relatively brief recent sobriety and his community and family ties were not sufficient to overcome a finding of dangerousness. While another court could arrive at a different conclusion, the IJ's decision appears grounded in specific facts related to this petitioner and focuses on the likelihood of future conduct. This appears to me a quintessentially discretionary reasoning process by the IJ that in no way rises to a constitutional deficiency and which I could not fault even under an

abuse of discretion review, if that were jurisdictionally permitted.[2] The second motion to enforce states repeatedly in a conclusory fashion that petitioner “does not ask this Court to reweigh the evidence or to substitute its own judgment for the IJ’s as to whether he should ultimately receive bond.” ECF No. 31 at 7. But in fact that is exactly what he is asking me to do. Because I do not have jurisdiction to review the IJ’s decision in this manner, petitioner’s second motion to enforce is denied.

## II. MOTION FOR ATTORNEYS’ FEES

Petitioner also moves for attorneys’ fees under EAJA as a “prevailing party” based on my granting of his original habeas petition, which afforded him a bond hearing. Under EAJA,

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any **civil action** (other than cases sounding in tort) ... brought by or against the United States ... unless the court finds that the position of the United States was **substantially justified** or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). EAJA statutory language further clarifies that “the position of the United States” here means, “in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based.” 28 U.S.C. § 2412(d)(2)(D). The Seventh Circuit has found that the purpose of EAJA

---

[2] Some district courts, primarily in the Ninth Circuit, have applied the Supreme Court’s decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), to support review of IJ bond determinations of “dangerousness” under an abuse of discretion standard, notwithstanding the jurisdiction-stripping provisions of 8 U.S.C. § 1226(e) and § 1252(a)(2)(B)(ii). *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (“*Wilkinson* compels the conclusion that application of the “dangerousness” standard is a reviewable mixed question [of law and fact].”); *but see Grant-Davis v. Anda-Ybarra*, No. 26-cv-54, 2026 WL 823095 (D.N.M. March 23, 2026) (finding *Wilkinson* not applicable in the context of § 1226 bond hearings and *Martinez* unpersuasive). The Seventh Circuit has not weighed in on this issue, and petitioner does not raise this argument in his current motion.

is three-fold: (1) to encourage private litigants to pursue challenges to government actions notwithstanding the cost of attorneys' fees; (2) to compensate parties for the cost of defending against unreasonable government action; and (3) to deter the government from prosecuting or defending cases in which its position is not substantially justified. *Berman v. Schweiker*, 713 F.2d 1290, 1297 (7th Cir. 1983).

Respondents oppose petitioner's motion for attorneys' fees, arguing that EAJA's clear waiver of sovereign immunity as to certain "civil action[s]" does not extend to habeas cases and that the government's position in this case has been "substantially justified" throughout. As discussed below, I disagree with respondents on both counts. I will grant petitioner's motion for fees but stay my ruling pending decisions in two cases currently before the Supreme Court that may impact the fee order.

**A. "Civil Action"**

Respondents argue at length that although habeas petitions are categorized as civil for general purposes, a habeas case is a unique proceeding subject to different rules and therefore is not unambiguously within the ambit of EAJA's statutory waiver of sovereign immunity. *See* ECF No. 33 at 5-9. The Supreme Court recently granted certiorari on the question of whether a successful habeas petition challenging civil immigration detention is a "civil action" for which attorneys' fees may be recovered under EAJA. *See Palacios v. Liggins*, No. 25-1223, 2026 WL 1855057 (U.S. June 29, 2026). As it currently stands, four out of the six federal circuits to address this question have concluded that habeas petitions qualify as civil actions for the purposes of EAJA.[3] The Seventh Circuit has not ruled on this issue.

[3] *See Michelin v.Warden Moshannon Valley Corr. Ctr,*, 169 F.4th 160 (3d Cir. 2026) ("civil action" unambiguously encompasses § 2241 challenges to civil immigration detention"); *reh'g en banc denied*, 169 F.4th 160 (3d Cir. 2026); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Vacchio v. Ashcroft*, 404 F.3d 669-72 (2d Cir. 2005); *In re Hill*, 775 F.2d 1037 (9th Cir. 1985). *But*

However, as the parties are aware, I confronted this question almost twenty years ago in *Kholyavskiy v. Schlecht*, 479 F.Supp.2d 897 (E.D. Wis. 2007). In *Kholyavskiy*, I concluded that the term "civil action" in EAJA is unambiguous and encompasses a habeas corpus action:

> [A]n action for habeas corpus is without question a civil action.
> …
> [T]he fact that a habeas action is not a *typical* civil action does not make the phrase civil action ambiguous. Courts should not read into statutes exceptions that are not there. If Congress had intended to exclude habeas actions from the EAJA, it would have done so as it excluded tort actions. Further, excluding habeas actions from the EAJA would thwart at least two of the statute's purposes—deterring unjustified government action and compensating private parties who resist such action. The unjustified detention of an individual is probably the most serious type of unjustified government action, and the EAJA contemplates that an individual subject to such action should be compensated for having to defend against it.
>
> Finally, even if the EAJA could be reasonably read as excluding habeas actions challenging criminal convictions, the same is not true of habeas actions challenging administrative detention. … Thus, it cannot be reasonably disputed that the EAJA applies to a habeas action challenging immigration-related detention.

*Id.*, 479 F.Supp.2d at 901 (internal citations omitted). I see no reason to depart from my reasoning in *Kholyavskiy* unless or until the Supreme Court or the Seventh Circuit arrives at a different conclusion.

**B. "Substantially Justified"**

Respondents next argue that petitioner is not entitled to attorneys' fees under EAJA because the government's position in this litigation has been "substantially justified." Specifically, they argue that the administrative decision to deny petitioner a bond hearing by asserting that his detention was pursuant to a mandatory detention provision that precludes bond, as well as the defense of that decision in court, were substantially justified. To be substantially justified, the government's position must be "justified in substance or in the main"

---

see *Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023); *Obando-Segura v. Garland*, 999 F.3d 190 (4th Cir. 2021).

or "justified to a degree that could satisfy a reasonable person." *Potdar v. Holder*, 585 F.3d 317, 319 (7th Cir. 2009). The government meets this burden if: (1) it had a reasonable basis in truth for the facts alleged, (2) it had a reasonable basis in law for the theory propounded, and (3) there was a reasonable connection between the facts and the legal theory. *Id.* Attorneys' fees may be awarded if either the government's pre-litigation conduct or its subsequent position in litigation lacked substantial justification. *Cunningham v. Barnhart*, 440 F.3d 862, 863 (7th Cir. 2006).

As it happens, the strength of respondents' argument on the "substantially justified" requirement under EAJA also likely depends on the outcome of another case now before the Supreme Court. The Court recently granted certiorari in *Rhoney v. Barbosa da Cunha*, No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026), a case that should bring finality to a question that has been percolating in federal courts around the country since the surge in immigration detentions began under the current administration. The Second Circuit decision to be reviewed, *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), is an analog to *Cirrus Rojas* in the Seventh Circuit. Both decisions emphatically found that the detentions of noncitizens like petitioner are governed by 8 U.S.C. § 1226(a) not § 1225(b)(2)(A), entitling them to bond hearings. Seven other federal circuits—the First, Third, Fourth, Sixth, Ninth, Tenth, and Eleventh—have reached the same conclusion. Only two circuits, the Fifth and the Eighth, have agreed with the government's position that noncitizens detained far from the border and already present in the country for some time are subject to mandatory detention without the opportunity for release on bond.[4]

---

[4] *See Lopez Garcia v. Guadian*, No. 25-7044, No. 25-7050, 2026 WL 2661092, at *5 (4th Cir. Sept. 10, 2026) (collecting circuit court cases).

As many courts have noted, the mandatory detention issue roiling the federal courts arises out of a sea change in the government's long-standing interpretation of decades-old statutory provisions controlling immigration detention. *See Cirrus Rojas*, 183 F.4th at 914 ("DHS now contends that for decades everyone has read the relevant statutory provisions incorrectly and that Section 1225, not 1226, controls, requiring [petitioner's] detention without so much as a hearing on bond."). The final federal circuit to address the issue described the deluge of federal habeas petitions flowing from the government's new interpretation: "In response to this tsunami, hundreds of federal district courts have considered the question we consider today. The overwhelming majority—over five hundred—rejected the Government's new construction and sided with the petitioners in over twenty thousand individual cases."[5] *Lopez Garcia v. Guadian*, No. 25-7044, No. 25-7050, 2026 WL 2661092, at *5 (4th Cir. Sept. 10, 2026) (footnote omitted). In *Cirrus Rojas*, decided July 30, 2026, one year into the government's new regime on mandatory detention, the Seventh Circuit noted the emerging consensus among federal courts, *id.* at 914, and emphasized the dramatic about-face entailed in the new statutory interpretation: "For the nearly thirty years since [the relevant statutes were enacted], five presidential administrations—including the first administration of President Donald J. Trump—have applied Section 1225(b)(2)(A) to aliens 'at the Nation's borders and ports of entry' and Section 1226(a) to aliens 'inside the United States.' Now DHS has changed its view." *Id.* at 918 (internal citations omitted).

[5] Investigative reporters tracking the federal courts' response to the detention surge over the past fifteen months have compiled a database suggesting that approximately ninety percent of district courts have rejected the government's assertion of mandatory detention during this time period. *See* Kyle Cheney & Jessie Blaeser, *Explore the data: More than 20,550 rulings against Trump in ICE cases*, Politico, May 13, 2026, at https://politico.com/news/2026/05/13/mandatory-detention-ice-cases-rulings-database-00913988 (database showing that federal judges in 13,421 cases have rejected mandatory detention; while federal judges in 1,452 cases have permitted it, primarily in the Fifth Circuit) (updated Oct. 6, 2026).

Respondents no doubt will argue that the fact the Supreme Court is now reviewing the mandatory detention issue is evidence that the government's current position is substantially justified to a degree that satisfies the EAJA standard. Perhaps. I cannot presume to know why certiorari was granted or what conclusion the Court will ultimately reach. However, as it stands now, based on the overwhelming consensus of district courts and the careful reasoning of a significant majority of federal appellate courts—including the Seventh Circuit, which I must follow—I find that the government's new interpretation of the relevant statutes to deny bond and impose mandatory detention on petitioner is not substantially justified.[6] There is no need for me to reprise the detailed statutory analysis and legislative history in *Cirrus Rojas* and other similar decisions, including my original decision granting petitioner's habeas in this case. The upshot of these decisions is that petitioner and tens of thousands of other noncitizens, many of whom have lived in the United States for many years and have no criminal record, have been held without bond based on a novel and unfounded interpretation of federal immigration laws, upending many lives. This is precisely the sort of "unreasonable government action" that EAJA's "broad remedial purpose" was intended to guard against by compensating private litigants for the cost of challenging such actions in court. *Berman*, 713 F.3d at 1297.

Respondents argue correctly that a loss on the merits, by itself, does not mean that legal arguments advanced in our adversarial legal system are necessarily unreasonable. Indeed, the Seventh Circuit has instructed district courts, in evaluating a motion for attorneys'

[6] *See Rahman v. Almodovar*, No. 25-cv-10203, 2026 WL 2410027 (S.D.N.Y. Aug. 18, 2026) (finding government's position on mandatory detention not substantially justified after Second Circuit's "recent evisceration of that position"); *but see Godinez-Lopez v. Ladwig*, No. 25-cv-2962, 2026 WL 2029736 (W.D.Tenn. July 13, 2026) (finding that government's position in detaining petitioner without bond was substantially justified prior to Sixth Circuit ruling rejecting that position).

fees under EAJA, to evaluate the factual and legal support for the government's position holistically—an analysis that "will vary considerably with the circumstances of each case." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000). In my view, the circumstances of this case do not involve a mere difference in legal arguments over which reasonable parties can disagree, but rather a wholesale reinvention of a settled legal process—i.e., the availability of bond to certain detained immigrants—with little to no foundation in statutory text, structure, or history. *See Cirrus Rojas* at 931. In this situation, the following guidance from the Seventh Circuit seems especially relevant:

> [T]here is also a certain element of policy involved in the award of attorney's fees under the EAJA. The potential threat of having to pay for the litigation costs of the opposing party may serve as an encouragement to government agencies to investigate, prepare and pursue litigation against private parties in a professional and appropriate manner. Likewise, the potential for recovering the expenses a private party puts forward to oppose the government encourages members of the public to assist in the "valuable public service [of] improving the efficiency of government operations."

*Id.* (quoting *Gotches v. Heckler*, 773 F.2d 108, 111 (7th Cir. 1985)). Consistent with this guidance, the availability of attorneys' fees for successfully challenging the government's flawed mandatory detention framework can serve the important deterrent function of making the government think twice before adopting entirely new and hugely consequential legal positions with so little foundation in law and fact. The potential for attorneys' fees is especially valuable in the immigration context, in which detainees have no constitutional right to counsel but may be detained for many months without the financial ability to challenge erroneous legal positions that impact their fate.

In petitioner's case, respondents' pre-litigation conduct also compels the conclusion that the government's position lacked substantial justification. *Cunningham,* 440 F.3d at 863. The original arrest warrant specifies that petitioner was to be detained under Section 236 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1226(a), which allows for release

on bond. ECF No. 10-2. After he was detained and requested a bond hearing, the IJ took the position that petitioner's detention was pursuant to § 1225(b)(2) so he was not entitled to bond. As I noted in my original decision granting the habeas petition in this case, the government's position that § 1225 applies to petitioner is thus "a legal theory created *ex post* to justify mandatory detention."[7] ECF No. 12 at 9. In light of respondents' subsequent failure to convincingly defend petitioner's detention under § 1225 in litigation, the initial sleight of hand with respect to the arrest warrant is additional evidence that the government's position in this case never had a "reasonable basis" in fact or law. *Potdar*, 585 F.3d at 319.

***

Because I find that habeas petitions qualify as "civil actions" for the purposes of EAJA, and that the government's position in this litigation has not been "substantially justified" within the meaning of EAJA, I will grant petitioner's motion for attorneys' fees. However, because my decision on fees may be impacted by the Supreme Court's decisions in two cases this term, I will stay the effect of my fee order until those cases are decided.

## III. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that petitioner's second motion to enforce my order granting his habeas petition (ECF No. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion for attorneys' fees under EAJA (ECF No. 24) is **GRANTED** but the effect of this fee order is **STAYED** until the Supreme Court

[7] Respondents argue that *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (B.I.A. 2025), an administrative decision issued shortly before petitioner's detention, required the IJ to deny petitioner a bond hearing, making the government's position here "substantially justified." ECF No. 33 at 15-16. I agree with petitioner that *Hurtado* cannot provide independent or persuasive justification for the government's position because the Board of Immigration Appeals is an arm of an agency within the executive branch and merely expresses official government policy—in this case, the policy of mandatory detention.

decides *Palacios v. Liggins* and *Rhoney v. Barbosa da Cunha*. The parties may move to reconsider or lift the stay on the fee order after the decisions are issued.

Dated at Milwaukee, Wisconsin, this 14th day of October, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge